**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **VICTOR H. ADKINS,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **3:16-CV-000459-RFC** |
| **NANCY A. BERRYHILL,** | § | |
| **Acting Commissioner of Social Security** | § | |
| **Administration,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Victor H. Adkins ("Adkins") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636 (c) and Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

## I. PROCEDURAL HISTORY AND CLAIMS

Adkins worked for twenty-one years as a military police serviceman, personal security driver, and building manager. (R:40-42, 51, 154).[1] He was forty-one years old at the time of his hearing before the Administrative Law Judge ("ALJ"). (R:38 ). Adkins filed an application for DIB on June 22, 2015, in which he alleged disability beginning January 1, 2015, due to sleep apnea, migraine headaches, right elbow sprain, lower back sprain, bilateral planter fasciitis, sciatic radiculopathy right lower extremity, cervical degenerative joint disease, left and right knee issues, tinnitus, traumatic

---

[1] Reference to the record of administrative proceedings is designated by (R:[page number(s)]). Reference to the pleadings is designated by (Doc.[docket number]:[page number(s)]).

brain injury ("TBI"), and hypertension. (R:154-157, 173). After his application was denied initially and upon reconsideration, Adkins requested a hearing. (R:92-96, 100-109). On June 21, 2016, he appeared in El Paso, Texas, with his attorney for a video conference hearing before the ALJ, who was presiding over the hearing from San Antonio, Texas. (R:34-59). On July 22, 2016, the ALJ issued a written decision denying benefits on the ground that although Adkins is unable to perform his past relevant work, there are jobs that exist in significant numbers in the national economy that Adkins can perform. (R:19-29). On September 2, 2016, the Appeals Council denied Adkins' request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R:1-7).

Adkins argues that the ALJ committed legal error by failing to properly weigh the opinion evidence in the record. (Doc. 16:2). Adkins seeks reversal of the Commissioner's decision and a remand for an award of benefits or for further proceedings. (Doc. 16:8).

## II. DISCUSSION

### A.    *Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir. 2001), quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla, and less than a preponderance." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000), quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). The Commissioner's findings will be upheld if supported by substantial evidence. *Masterson v.*

*Barnhart*, 309 F.3d 267,  272 (5th Cir. 2002).  A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (*per curiam*).

In applying the substantial evidence standard, the Court may not "reweigh the evidence, try the issues *de novo*, or substitute [its own] judgment for the Commissioner's, even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272.  "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452 (citations and internal alterations omitted).  If the Commissioner applied the proper legal standards and his findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

**B.    *Evaluation Process***

It is the claimant's burden to establish disability, i.e., a physical or mental impairment lasting at least 12 months that prevents him from engaging in substantial gainful activity, and to provide or identify medical and other evidence of his impairments.  *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c).  The claimant's own subjective complaints, without objective medical evidence of record, are insufficient to establish disability.  *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

3

Before moving to step four, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p. The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley*, 67 F.3d at 557. In making this determination, the ALJ must consider all the record evidence and determine the claimant's abilities despite his physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

The claimant bears the burden of proof at the first four steps of the analysis. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts ("VE") or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Anderson*, 887 F.2d at 632-633.

In the present case, at step two, the ALJ found that Adkins had severe impairments, in combination if not singly, of: lumbar disc disease with mild scoliosis, post traumatic stress disorder ("PTSD"), and depression; the ALJ also found that Adkins had other, non-severe impairments.

4

(R:21).  At step three, the ALJ determined that none of Adkins' impairments, either alone or in

combination, met or medically equaled one of the listed impairments.  (R:22-23).

Upon considering the entire record, the ALJ determined that Adkins retained the RFC to

perform a reduced range of light work[2] with the following limitations:  Adkins can lift and/or carry

twenty pounds occasionally and ten pounds frequently, stand and/or walk six hours in an eight-hour

workday, and sit six hours in an eight-hour workday.  (R:23-27).  However, Adkins is further limited

to occasional balancing, stooping, kneeling, crouching, crawling, or climbing ramps and stairs, and

no climbing of ladders, ropes or scaffolds.  (*Id*.).  Additionally, Adkins is limited to understanding,

remembering, and carrying out simple tasks or instructions, and to occasional interaction with the

public.  (*Id*.).

At step four, finding the VE's testimony in response to a hypothetical question reflecting the

Adkins' RFC consistent with the Dictionary of Occupational Titles ("DOT"), the ALJ found that

Adkins was not able to return to his past relevant work.  (R:27-28).

In reaching this conclusion, the ALJ specifically discussed Adkins' subjective complaints,

objective findings, the opinion evidence, the testimony at the hearing, and the credibility thereof.

(R:23-27).  The ALJ found that the Adkins' statements concerning the intensity, persistence, and

---

[2] According to the regulations:
[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may
be very little, a job is in this category when it requires a good deal of walking or
standing, or when it involves sitting most of the time with some pushing and pulling
of arm or leg controls.  To be considered capable of performing a full or wide range
of light work, you must have the ability to do substantially all of these activities.  If
someone can do light work, we determine that he or she can also do sedentary work,
unless there are additional limiting factors such as loss of fine dexterity or inability
to sit for long periods of time.
20 C.F.R. § 404.1567(b).

limiting effects of his symptoms were not consistent with the evidence of record. (R:26). Adkins alleged an inability to sustain full-time employment due to sleep apnea, migraines, right elbow sprain, neck and back problems, bilateral knee disorders, tinnitus, traumatic brain injury, and hypertension, with symptoms of chronic pain, exertional and postural restrictions, poor memory and concentration, difficulty completing tasks or getting along with others, worsening headaches, limited socialization, restricted standing, walking or sitting, and diminished activities of daily living. (R:24).

The ALJ cited the objective evidence reflecting that in late 2014, Adkins was fully ambulatory without the use of an assistive device, that he had a good range of motion in all joints and extremities, had grossly intact sensation and no neurological deficits, and a cranial nerve exam was within normal limits. (R:24). In early 2015, Adkins' sleep apnea, migraines, and all major domains of his life were stable and he had no unresolved issues; physical exams were within normal limits including his extremities, gait and stance, mental status exam found oriented, calm and cooperative, good mood, coherent and local with no delusions and fair judgment and insight. (*Id.*).

The ALJ gave little weight to the opinion of Adkins' consultative medical examiner, Dr. Juan Castro Combs ("Dr. Combs"), dated September 19, 2015, (R:24-25, 486-492); great weight to the probative value of the September 20, 2015 report as a whole of Adkins' consultative psychological examiner, Dr. Randall Rattan, Ph.D. ("Dr. Rattan"), (R:26, 517-522); little weight to the February 2, 2016, medical source statement of Adkins' treating nurse practitioner, Alicia Moreno MSN ("Moreno"), (R:26, 1412-1414); little weight to the State agency's physical assessments and only partial weight to the mental assessments, (R:27, 60-74, 76-90); and, little weight to the VA rating, (R:27, 1371-1411).

6

At step five, considering Adkins' age, education, work experience, and RFC, and considering the VE testimony, the ALJ found that Adkins is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R:28-29). Consequently, the ALJ found that Adkins was not disabled from October 28, 2014, to the date of the ALJ's decision. (R:22-29).

**C.     _The ALJ Properly Weighed the Opinion Evidence_**

Adkins contends that the ALJ failed to properly evaluate and weigh the medical opinions in the record, essentially summarily disregarding all medical opinions and giving them no weight while failing to identify any contradicting evidence or opinions or any evidence to support the conclusion that the opinions are not credible. (Doc. 16:4-5).

The following factors, set forth in Section 404.1527(c), are to be considered in deciding the weight the ALJ gives to "any medical opinion" unless controlling weight is given to a treating source's opinion under paragraph (c)(2). 20 C.F.R. § 404.1527(c) ("Evaluating opinion evidence"). Specifically, the regulation requires consideration of:

1.   the physician's examining relationship;

2.   the nature and extent of the treatment relationship: length of treatment and frequency of examination;

3.   the support a medical source presents for its opinion, in terms of objective medical evidence and explanation;

4.   the consistency of the opinion with the record as a whole;

5.   the specialization of the treating physician; and

6.   Other factors, including "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has."

7

20 C.F.R. § 404.1527(c); SSR 06-3p.

> ### (1)   *Consultative Physical Examination by Dr. Combs*

Adkins challenges the ALJ's determination to give the opinion of Adkins' consultative medical examiner, Dr. Combs, little weight. (Doc. 16:5; R:25). Adkins argues that the ALJ failed to indicate any contradicting evidence or opinion or evidence that Dr. Combs' opinion was not credible. (*Id.*).

Dr. Combs, provided an opinion dated September 19, 2015. (R:486-492). Dr. Combs' report reflects that Adkins presented in mild distress and muscle testing reflected mild to moderate strength loss (3-4/5) on the left side, and decrease in sensation and range of motion in several areas, including the cervical spine, left shoulder, left elbow, lower back, hips, and right knee. (R:488-490). Dr. Combs cited moderate to severe limitations with sitting, standing, and walking, and lifting and carrying weight. (R:491) Dr. Combs stated that Adkins could not perform bending, stooping, crouching, squatting, "and so on" with any regularity. (*Id.*). Dr. Combs found that Adkins could only occasionally perform reaching, handling, feeling, grasping, or fingering. (*Id.*). Dr. Combs' report indicated that Adkins was unable to lift, carry and handle "light" objects, squat and rise from that position, get up and down from the exam table, walk on heels or toes, or stand or hop on either foot bilaterally. (R:25, 490). Dr. Combs assessed such limitations resulting from sciatica, right knee osteoarthritis, neuropathy of the lower extremities, possible left rotator cuff tear, and bilateral plantar fasciitis. (R:491). Dr. Combs suggested that Adkins might benefit from using an assistive device for walking long distances or on uneven terrain. (*Id.*). Shortly after the consultative examination, Dr. Combs ordered imaging studies, which are included in the record. (R:495, 500-501, 525-526).

The ALJ gave little weight to this opinion, stating that it lacked "independent support from the overwhelming weight of the medical evidence of record  [], and no attached medical imaging studies were provided to verify the claimant's subjective assertions, upon which Dr. Combs seems to over-rely."  (R:25).   The ALJ referred to there being various treatment notes with "largely unremarkable findings" and imaging studies dated September 21, 2015, that showed only moderate loss of disc space, mild scoliosis, and only very mild degenerative changes affecting the right knee.  (R:25, 525-526).  Although the ALJ did not associate such studies with having been ordered by Dr. Combs, the ALJ found the studies did not support Dr. Combs' assessments.  (R:25).

Adkins argues that Dr. Combs' opinion was supported by both his physical examination and the radiological reports ordered shortly thereafter.  (Doc. 16:5).  Adkins argues, however, that the radiological reports were unnecessary and that the ALJ could have ordered that the record be further developed had the reports not been included, but maintains that the ALJ should not be playing doctor by interpreting the imaging reports by himself.  (Doc. 16:5-6).

The Court notes that the results of the imaging studies were not available to Dr. Combs on the date of his consultative examination and were not discussed by him in his report.  (*See* R:486-492).  Further, the state agency examiner, Murray Lerner, Ph.D. ("Lerner") stated in his notes regarding the consultative examination that the lumbar spine X-ray reflected moderate DDD (degenerative disc disease) and mild scoliosis and the right knee X-ray reflected mild DJD (degenerative joint disease).  (R:65).  Although in addressing the studies the ALJ phrased the findings in a slightly different way (i.e., "no more than moderate loss of disc space" ... "only very mild degenerative changes affecting the right knee"), such restatement does not amount to playing doctor.  (*See* Doc. 18:4; R:24-25).  Lerner concluded that the limitations alleged in the consultative

Case 3:16-cv-00459-RFC   Document 19   Filed 03/29/17   Page 10 of 16


examination report are not fully supported by the evidence of record. (R:67). Thus, the ALJ was not "playing doctor" but rather restating and agreeing with findings from one of the state agency medical examiners. Moreover, the ALJ properly accounted for Adkins' X-ray findings by limiting him to a modified range of light work. (R:23).

Although the ALJ did not detail all of the evidence forming the overwhelming weight contrary to Dr. Combs' opinion, the ALJ's decision to give little weight to Dr. Combs' opinion is supported by numerous normal examination findings, both before and after the consultative examination, inconsistent with Dr. Combs' findings. Multiple times in 2014 and 2015, Adkins was noted to be fully ambulatory without assistive device, to have a normal gait, stance, and strength, intact range of motion and sensation in all extremities and normal reflexes. (R:24, 274, 365, 367, 392, 402, 466-467, 552). The day after Dr. Combs' examination, Adkins was observed to have no gait disturbance. (R:517). Additional records after the consultative examination and into 2016 continue to reflect that Adkins was ambulatory with steady gait without assistive device and in no apparent distress. (R:1262, 1575).

There is substantial evidence to support the ALJ's determination that Dr. Combs' opinion regarding greater limitations than assessed by the ALJ was not supported by the overwhelming weight of the evidence of record. Consistency with the record as a whole is a proper consideration in determining what weight to give a medical opinion. 20 C.F.R. § 404.1527(c)(4). The Court does not find that the ALJ committed reversible error in deciding to afford little weight to Dr. Combs' examination findings and report. Adkins is not entitled to relief on this claim.

### (2)   *Consultative Psychological Examination by Dr. Rattan*

Adkins asserts that, while the ALJ stated that he gave great weight to the opinion of Adkins' consultative psychological examiner, Dr. Randall Rattan, Ph.D., the ALJ failed to discuss or give any weight to Dr. Rattan's opinion, specifically regarding limitations including difficulty exhibiting contextually appropriate behavior and maintaining consistent employment from a mental health standpoint.  (Doc. 16:6, R:25-26, 522).

The ALJ gave great weight to the probative value of the September 20, 2015, report from Dr. Rattan.  (R:26, 517-522).  Among other findings, the ALJ noted the assessment of PTSD and adjustment disorder with anxiety, with a guarded prognosis dependent on treatment, that Adkins was capable of basic instructions.  (R:26, 522).  The ALJ also referenced progress notes through late 2015 reflecting increased complaints of depression and anger issues, but findings of mental status exam otherwise stable.  (R:26, 1272-1279).  In early 2016, records reflect that medication was increased and therapy encouraged when Adkins complained of decreased concentration, and otherwise there were no signs of new or worsening condition.  (R:1569-1572).

The ALJ discussed Rattan's opinion that Adkins would have difficulty exhibiting contextually appropriate behavior, and specifically accounted for such opinion by limiting him to only occasional interaction with the public; thus, the ALJ did not disregard Rattan's opinion.  (R:23, 26).  The ALJ's determination is supported by the state agency examiners' consistent findings that, while Adkins was moderately limited in his interactions with the public, he had no significant limitations with respect to interacting with supervisors or coworkers.  (R:71-72, 87).

While the ALJ did not specifically discuss Dr. Rattan's finding that Adkins would have difficulty maintaining consistent employment, the ALJ noted that Adkins had average attention and

11

concentration.  (R:25-26, 521-522).  The ALJ also noted that the prognosis was guarded dependent on continued medication and recommended therapy.  (R:26, 522).  Adkins reported having difficulty scheduling and remembering appointments and completing *complex* tasks in a timely manner due to his poor concentration and thinking.  (R:520).  Adkins also reported that the medication he was taking effectively treated his mental health symptoms and that he was attending therapy.  (R:519).  These and other mostly normal findings, listed in the ALJ's decision and found in the evidence of record, support the ALJ's decision and do not support Dr. Rattan's statement that Adkins would have difficulty maintaining consistent employment even if he continued to be compliant with treatment.  If a condition can be reasonably remedied by treatment, it is not disabling.  *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Other evidence in the record also undermines Dr. Rattan's opinion that Adkins would have a difficult time maintaining consistent employment, including Adkins' own report in December 2014 that he did not have a history of occupational problems with absenteeism or other issues, and that his concentration was better and stable since he had been taking his medication.  (R:420, 425, 429-430).  On March 25, 2015, Adkins reported that all major domains in his life were stable, including housing, finances, relationships, and employment.  (R:24, 403).

The ALJ's determination with respect to Dr. Rattan's opinion is supported by substantial evidence.  The Court does not find that the ALJ committed reversible error in not specifically mentioning Dr. Rattan's assessment that Adkins would have difficulty maintaining consistent employment from a mental health standpoint.  Adkins is denied relief on this claim.

### *(3)*     *Psychiatric Nurse Practitioner Moreno, Veteran Administration Clinic*

Adkins complains that the ALJ improperly disregarded the February 2, 2016, medical source statement of Adkins' treating nurse practitioner, Alicia Moreno MSN ("Moreno"), on the grounds that she was not an acceptable medical source.  (Doc. 16:6, R:26).

Moreno reported that Adkins had slight limitations in understanding and remembering both short, simple instructions and detailed instructions, as well as in carrying out detailed instructions, which she attributed to his PTSD and sleep apnea.  (R:1412).  Moreno assessed moderate limitations in Adkins' ability to interact appropriately with the public, supervisors, and coworkers, and to respond to changes in a routine work setting.  (R:1413).  She attributed these moderate limitations to Adkins' PTSD, which causes him to have social anxiety and become easily irritated with others. (*Id*.).  Moreno also assessed marked difficulties in responding appropriately to work pressures in a usual work setting, noting that Adkins had difficulty controlling his anger and anxiety.  (*Id*.). Moreno further noted that Adkins was compliant with his medication, but continued to have some symptoms of depression, anxiety, and irritability, and suggested that he initiate therapy in addition to his medication.  (R:1414).

The ALJ gave Moreno's medical source statement little weight, noting both that Moreno was not an acceptable medical source and that she cited marked limitations in responding appropriately to work pressures in a usual setting where the totality of the evidence of record supported no more than moderate limitations in that area.  (R:26, 1412-1414).  The ALJ's RFC assessment, however, is consistent with some of the limitations Moreno recommended, including a limitation to understanding, remembering, and carrying out simple tasks or instructions.  (R:26, 1412).  Further, the ALJ accounted for Moreno's opinion that Adkins had moderate limitations interacting

appropriately with the public by limiting Adkins to only occasional interaction with the public. (R:26, 1413). Moreno's assessment that Adkins had moderate limitations interacting appropriately with coworkers and supervisors and in responding appropriately to changes in a routine work setting was inconsistent with other evidence in the record, including the state agency examiners' determinations. (R:72, 87-88, 1413).

Adkins maintains that the ALJ disregarded Moreno's opinion altogether, contrary to the regulations, which are binding and require the ALJ to consider evidence from "other sources" as part of considering all of the available evidence, because such evidence might show the severity of an impairment and how it affects a claimant's ability to function. (Doc. 16:6-7, citing 20 C.F.R. §§ 404.1513, 404.1527, 416.913, 416.927; SSR 06-3p; *Spellman*, 1 F.3d at 361, n. 7 (reiterating "strong preference for requiring the [Agency] to follow its own internal procedures")).

The Court notes that both whether an opinion is from an acceptable medical source and whether the opinion is consistent with other evidence in the record are appropriate considerations when weighing opinion evidence. *See* SSR 06-3p, 2006 WL 2329939, at *5. While SSR 06-3p provides that an opinion from a non-acceptable medical source may outweigh the opinion of an acceptable medical source under the particular facts of a given case, (e.g., if such opinion had better evidentiary or explanatory support based on more frequent treatment notes), the ruling also affirms that whether a source is an acceptable medical source is a relevant factor in weighing the opinion, and the same factors provided in the regulations to evaluate acceptable sources are appropriate to consider with respect to non-acceptable sources, where relevant. *See id.*

The ALJ did not disregard Moreno's medical source statement. The ALJ considered the opinions set forth in her statement, whether Moreno's treatment notes supported the limitations she

assessed, and their consistency with the rest of the record evidence, and determined that some of the limitations were inconsistent with and not supported by substantial record evidence.

On December 19, 2014, Plaintiff had no impairment in concentration and was stable on his medication (R:423-435), he denied having a history of problems or conflicts with coworkers, supervisors, or absenteeism (R:434-435), and he was open, friendly, cooperative, and receptive with logical, well-organized thoughts, conserved judgment and insight, and adequate impulse control. (R:432). On March 3, July 28, and November 30, 2015, and April 8, 2016, Moreno observed that Adkins appeared calm and cooperative and had "fair" eye contact, grooming, hygiene, insight, and judgment. (R:24, 387, 406, 1258-1259, 1544). Additionally, on several occasions, Adkins reported that his medication was working and that he was doing well. (R:386, 405, 1543, 1568). Moreno's letter dated January 25, 2016, indicated that she had been treating Adkins since December 19, 2014, that he had been compliant with his medications but still experienced symptoms of depression, anxiety, and irritability, and recommended that he initiate therapy to help such symptoms. (R:1414). On September 14, 2015, Adkins had refused any change to his medications. (R:434-435). But on February 3, 2016, Adkins' medication was increased and therapy was again recommended as it was noted he had not attended therapy since February 2015. (R:1569-1572); see *Lovelace*, 813 F.2d at 59 (a condition reasonably remedied by treatment is not disabling.).

Thus, the ALJ satisfied the duty to consider Moreno's statement. (R:26). The Court does not find that the ALJ committed reversible error by pointing out that Moreno was not an acceptable medical source or that the opinion was not consistent with the totality of the evidence. There is substantial evidence to support the ALJ's determination. Adkins is not entitled to relief on this claim.

Because the ALJ's determination is supported by substantial evidence in the record and did not result from reversible legal error, Adkins is not entitled to relief on his claims.

## <u>CONCLUSION</u>

Based on the foregoing, the Court hereby **ORDERS** that the decision of the Commissioner be **AFFIRMED** consistent with this opinion.

**SIGNED and ENTERED on March 29, 2017.**


**ROBERT F. CASTANEDA**
**UNITED STATES MAGISTRATE JUDGE**